# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWIN CHARLES KRELL, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-18-637 |
| QUEEN ANNE'S COUNTY, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This case arises out of the arrest of Edwin Krell ("Plaintiff") and his subsequent confinement at Queen Anne's County Detention Center ("QACDC"). In March 2018, Plaintiff filed a twelve-count complaint alleging federal and state law claims against numerous state and local officials, as well as Queen Anne's County. (Compl., ECF No. 1.) In December 2018, this Court dismissed several of those claims and parties, leaving two sets of defendants: (1) two of the state troopers that arrested Plaintiff, Sergeant Tyson Brice and Trooper First Class Kyle Braightmeyer, and (2) the warden of QACDC, LaMonte Cooke. (Mem. Op. Mot. Dismiss, ECF No. 27.)

Plaintiff brings a variety of federal and state law claims against Brice and Braightmeyer (collectively, "Defendants"). Plaintiff brings three federal causes of action under 42 U.S.C. § 1983: Count I alleges violations of the Fourteenth Amendment's Due Process Clause, Count II alleges violations of the Fourth Amendment, and Count IV—brought only against Braightmeyer—alleges violations of the Fourteenth Amendment's Equal Protection Clause. Plaintiff also brings two claims under the Maryland Declaration of Rights: Count VI alleges violations of Articles 24

1

and 26, and Count VII alleges violations of Articles 16 and 25. Plaintiff also brings numerous state law claims: Count IX alleges negligence, Count X alleges gross negligence, Count XI alleges intentional infliction of emotional distress ("IIED"), and Count XII—brought only against Braightmeyer—alleges state law battery. (Compl. ¶ 61-169.)

Discovery has been completed, and Defendants move to dismiss or for summary judgment on all claims.[1] (M.S.J., ECF No. 58.) The motions have been fully briefed. No hearing is required. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, the Court will grant this motion in part and deny it in part.[2]

### I.    Factual Background

Plaintiff was arrested in his home for a felony drug offense on March 3, 2015. (Braightmeyer Decl. ¶ 2, M.S.J. Ex. 8, ECF No. 58-10.) The arrest was made pursuant to an arrest warrant. (M.S.J. Ex. 3, ECF No. 58-6.) Two of the officers involved in executing the warrant were Tyson Brice and Kyle Braightmeyer. (Braightmeyer Decl. ¶ 2; Brice Decl. ¶ 2, M.S.J. Ex. 9, ECF 58-11.) Plaintiff's partner, Paul Ellwood, was present at the time and was also arrested. (Ellwood Depo. 14:12–18, 28:10–13, Opp'n Mem. Ex. E, ECF No. 65-5.)

The crux of Plaintiff's allegations are as follows: upon entering Plaintiff's home, Braightmeyer tackled him and pushed his head into the ground with enough force to break the floor tile. (Krell Depo. 120:11–17, Opp'n Mem. Ex. B, ECF No. 66-2.) Braightmeyer then handcuffed Plaintiff behind his back and lifted him off the floor by the handcuffs. (*Id.* 126:18–19.) Plaintiff told Defendants that he had previous shoulder problems and was in severe pain, and

---

[1] Warden Cooke has also moved for summary judgment on the remaining claims against him. (ECF No. 51.) The Court addresses that motion in a separate memorandum.

[2] Defendants also filed a motion to seal exhibits related to Plaintiff's medical records. (Mot. Seal, ECF No. 61.) The Court will grant this uncontested motion.

asked that they move the handcuffs to his front. (*Id.* 126:2–11.) Braightmeyer refused and said "F this faggot . . . I'm sticking to protocol." (*Id.* 130:11–18.) Despite Plaintiff's pleas for medical help, Defendants refused to render any aid. (*Id.* 147:5–14.) Defendants' use of force during the arrest ultimately caused Plaintiff to need surgery to repair a ruptured subscapularis tendon and a torn rotator cuff. (Opp'n Mem. at 12, ECF No. 65; Opp'n Mem. Ex. J, ECF No. 65-6.)

Defendants dispute virtually every aspect of this account. Defendants deny Braightmeyer ever pushed Plaintiff's head into the ground. (Braightmeyer Decl. ¶ 7; Brice Decl. ¶ 6). Defendants deny Braightmeyer used any excessive force when handcuffing Plaintiff. (Braightmeyer Decl. ¶ 7; Brice Decl. ¶ 6.) Defendants deny Braightmeyer ever used a homophobic slur. (Braightmeyer Decl. ¶ 8; Brice Decl. ¶ 9.) Defendants contend they did move Plaintiff's handcuffs to the front when he requested. (Braightmeyer Decl. ¶ 9; Brice Decl. ¶ 7.) Defendants contend that Plaintiff's shoulder injury predated his arrest and they did not cause or exacerbate any of Plaintiff's injuries. (M.S.J. Ex. 6 at 6, ECF No. 59.)

Despite these divergent narratives about the course of events on March 3, 2015, Defendants contend there are no genuine disputes of material fact, and they move for summary judgment on each claim.

## II. *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The moving party bears the burden of demonstrating the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the non-moving party, then a

genuine dispute of material fact exists, and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But, the "mere existence of a scintilla of evidence in support of the [non-moving party's] position" is insufficient. *Id.* at 252.

Where a genuine dispute exists, the facts and inferences derived therefrom must be viewed in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2009). "Where the determination of what actually happened depends on an assessment of the credibility of the [parties'] respective witnesses, 'this assessment is a disputed issue of fact that cannot be resolved on summary judgment.'" *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 751 (4th Cir. 2016) (quoting *Rainey v. Conerly*, 973 F.2d 321, 324 (4th Cir. 1992)).

In this case, it is Defendants' burden to show they are entitled to judgment as a matter of law, but Plaintiff has the burden of persuasion in establishing his claims. This means that the Court views the evidence in the light most favorable to Plaintiff, but Plaintiff still must present enough evidence to show there is a genuine issue of material fact for trial.

## III.    *Analysis*

### A. *The Excessive Force Claims*

There are three excessive force claims pending against Defendants: Count II alleges a violation of the Fourth Amendment, Count VI alleges a violation of Articles 24 and 26 of the Maryland Declaration of Rights, and Count XII—alleged only against Braightmeyer—alleges state law battery.[3] These claims rise and fall together, as the state law and state constitutional

---

[3] Defendants request the Court confirm its holding from its December 12, 2018 ruling (ECF No. 27) that Plaintiff failed to state a claim for excessive force under the Fourteenth Amendment (Count I). (M.S.J. Mem. Supp. at 24, ECF No. 58-1.) The Court does so here. The reason the Court's prior order stated that Count I remained pending against Defendants is because Plaintiff did sufficiently state a claim for deliberate indifference under the Fourteenth Amendment, which was also included in Count I.

claims parallel the Fourth Amendment claim. *Hines v. French*, 852 A.2d 1047, 1069 (Md. Ct. Spec. App. 2004) ("The standards for analyzing claims of excessive force are the same under Articles 24 and 26 of the Maryland Constitution as that under the Fourth Amendment of the United States Constitution."); *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994) (explaining that a state law battery claim is subsumed within a federal claim for excessive use of force).

A claim of excessive force during an arrest is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). The right to make a stop or arrest necessarily involves the right to use some degree of physical force so "[t]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 396–97. A court analyzes several factors to determine objective reasonableness, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The extent of the plaintiff's injury is also a relevant consideration." *Bailey v. Kennedy*, 349 F.3d 731, 743 (4th Cir. 2003) (quoting *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)).

To prevail on an excessive force claim, a plaintiff must also establish causation between the force alleged and the plaintiff's injury. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) ("Of course, constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation."); *Estate of Anthony Anderson v. Strohman*, Civ. No. GLR-13-3167, 2016 WL 4013638, at *10 (D. Md. July 27, 2016) (granting defendants summary judgment where Plaintiff failed to establish defendants' use of excessive force was the actual cause of

Plaintiff's death). "Court[s] look[] to state law to determine what is required to show [causation]." *Estate of Anthony Anderson*, 2016 WL 4013638, at *10.

Under Maryland law, expert testimony is not required to establish causation where the plaintiff's injury falls into one of the three *Wilhelm* categories: (1) the injury develops "coincidentally with" or within a "reasonable time after" the alleged act; (2) the proof of causation is "clearly apparent" from the nature and circumstances of the injury; or (3) the "cause of the injury relates to matters of common experience, knowledge, or observation of laymen." *Wilhelm v. State Traffic Safety Comm'n*, 185 A.2d 715, 719 (Md. 1962). But "[w]hen a complicated issue of medical causation arises, expert testimony is almost always required." *Giant Food, Inc. v. Booker*, 831 A.2d 481, 488 (Md. Ct. Spec. App. 2003).

"Complicated medical questions" can arise when the plaintiff has a pre-existing chronic injury that "cloud[s] causation." *Wiseman v. Wal-Mart Stores, Inc.*, Civ. No. SAG-16-04030, 2017 WL 4162238, at *2–3 (D. Md. Sept. 19, 2017) (requiring expert testimony where a plaintiff had chronic shoulder and knee problems prior to the fall that allegedly worsened them); *see also Am. Airlines Corp. v. Stokes*, 707 A.2d 412, 419 (Md. Ct. Spec. App. 1998) (requiring expert testimony where the plaintiff "had a long history of chronic back problems that presented a far more likely explanation for his ultimate" back injury than the incident alleged). The purpose behind requiring proof of causation is "to guard against raw speculation by the fact-finder." *Sakaria v. Trans World Airlines*, 8 F.3d 164, 172–73 (4th Cir. 1993).

Plaintiff alleges two instances of excessive force that resulted in two different injuries. The first involves Braightmeyer allegedly pulling Plaintiff up off the floor by the handcuffs and then subsequently refusing to move Plaintiff's handcuffs to his front. (Krell Depo. 126:2–19.) Plaintiff alleges this resulted in shoulder injuries that needed surgical repair. (Opp'n Mem. at 12.) The

second involves Braightmeyer allegedly slamming Plaintiff's face into the ground with enough force that his face broke the floor tiles. (Krell Depo. 120:11–17.) Plaintiff alleges this resulted in facial lacerations. (*Id.* 121:14–16.) The Court addresses each injury in turn.

### 1. The Shoulder Injury

Defendants contend that Plaintiff's excessive force claims related to his shoulder injury fail as a matter of law because Plaintiff has not produced a medical expert to testify to causation between the force alleged and Plaintiff's shoulder injury. (M.S.J. Mem. Supp. at 16–17.) An expert is required, Defendants argue, because Plaintiff's "serious pre-existing injuries" complicate the causation analysis and "the parsing out of pre-existing injuries is not something in the purview of the normal [juror]."[4] (*Id.*)

The Court agrees. Plaintiff had extensive shoulder damage at the time of his arrest. A summary of his medical records reveals that between 2000–2015, Plaintiff had more than 100 documented visits to the emergency room related to his shoulder. (M.S.J. Ex. 7.) Most of these visits involved shoulder dislocations. (*Id.*) During one visit, Plaintiff's shoulder dislocated and was reduced a total of eight times. (*Id.* at 7.) Medical personnel consistently informed Plaintiff that his shoulder needed to be surgically repaired or the shoulder pain and dislocations would continue. (*Id.*) Plaintiff acknowledged this, but stated he was unable to follow up with an orthopedic surgeon because he lacked medical insurance. (Krell Depo. 245:3–6.)

In light of this history, Plaintiff's evidence that Defendants' conduct caused his shoulder injuries is inadequate. For example, Plaintiff's testimony that he was in pain during his arrest (*id.*

---

[4] Defendants also produce a report from Dr. Robert Saltzman, an orthopedist who reviewed Plaintiff's medical records and concluded that Plaintiff's shoulder problems predated his arrest and, in his opinion, there were "no new or exacerbated injuries on March 3, 2015." (M.S.J. Ex. 6 at 5.) But Dr. Saltzman's report was unsworn, and as such, the Court cannot consider it at the summary judgment stage. *Edens v. Kennedy*, 112 F. App'x 870, 879 (4th Cir. 2004) ("[U]nsworn reports are inadmissible on summary judgment unless accompanied by affidavits or depositions swearing to their contents and conclusions.")

107:9–10), and Ellwood's corroboration of this (Ellwood Depo. 67:5), do not establish that Plaintiff suffered new injuries during his arrest or that Braightmeyer's use of force permanently exacerbated his existing ones. Similarly, the shoulder surgery he received five months later sheds no light on whether Plaintiff's ruptured subscapularis tendon and torn rotator cuff predated his arrest or arose as a result of it. (Opp'n Mem. Ex. J.) His medical records suggest a strong possibility the former is true. Accordingly, none of the three *Wilhelm* categories are implicated here: it is not clear that his injury developed "coincidentally with" Defendants' use of force, causation is not "clearly apparent" from the nature of his injury, and the cause of his injury does not relate to the "common experience, knowledge, or observation of laymen." *See Wilhelm*, 185 A.2d at 719.

In short, the issue of causation here is a "complicated medical question" for which expert testimony is required. *See Giant Food*, 831 A.2d at 488. Because Plaintiff has produced no such testimony, Plaintiff's excessive force claims fail as a matter of law to the extent they allege any shoulder injuries.

### 2. The Facial Injuries

Plaintiff's alleged facial injuries are another matter. Neither party contends these injuries involve a "complicated medical question" of causation that would necessitate expert testimony. Therefore, the issue is whether there is a genuine dispute of material fact as to whether Defendants used the amount of force alleged, and if so, whether that force was reasonable.

Plaintiff asserts that he obtained facial lacerations when, during his arrest, Braightmeyer tackled him and forcefully pushed his head into the ground. (Krell Depo. 120:11–21.) The whole incident took approximately "ten seconds," but the force was allegedly sufficient to break the tiles and cause Plaintiff's face to be "a little scratched up." (*Id.* 121:6–15.) Plaintiff contends that he

8

did not resist being handcuffed and was wearing only boxer shorts at the time. (*Id.* 120:12–21; Braightmeyer Decl. ¶ 5.) Ellwood was not in the room when the incident occurred, but saw Plaintiff immediately after it, and testified that he observed "a couple scars" on Plaintiff's face and later saw the broken tile. (Ellwood Depo. 62:1–6, 63:2–9.)

Defendants deny that Braightmeyer ever pushed Plaintiff's head into the ground. (Braightmeyer Decl. ¶ 7, Brice Decl. ¶ 6.) They point to the absence of any physical evidence supporting Plaintiff's allegation—there are no photos of either the broken tile or Plaintiff's facial injuries, nor are there any medical records describing such an injury. (M.S.J. Mem. Supp. at 22–23.) They also argue, however, that even if Braightmeyer's actions had caused Plaintiff's face to make contact with the floor, that use of force would have been reasonable. (*Id.* at 23.) The moment after officers enter a home is "the most dangerous," as officers do not know "how many people [are] in the house, whether they [are] armed, or if there [are] any dangerous animals," so some use of force is reasonable. (Brice Decl. ¶ 3; Braightmeyer Decl. ¶ 3.) Further, they argue, some use of force would have been reasonable in this case because Plaintiff was initially "muscling" and resisting being handcuffed. (Braightmeyer Depo. 45:12–14.)

The parties' conflicting accounts about this initial takedown reveal a genuine dispute of material fact as to whether Braightmeyer used the force alleged. It is true that summary judgment can be appropriate in excessive force cases where the plaintiff cannot produce any evidence beyond his own allegations. *See Newman v. Green*, 198 F. Supp. 2d 664, 668 (D. Md. 2002) (granting defendant summary judgment where the plaintiff could produce no medical records or witnesses to support his allegation). But even absent any physical evidence or medical records establishing an injury, a plaintiff can survive summary judgment on an excessive force claim if he has supporting witnesses. *See Mann v. Failey*, 578 F. App'x 267, 270, 275 (4th Cir. 2014) (denying

defendant summary judgment where the plaintiff had no medical records supporting his allegation but did have several supporting witnesses). Although Ellwood was not present during the alleged incident, he testified that he saw Plaintiff immediately after it, and he observed facial lacerations and broken tile. (Ellwood Depo. 62:1–6, 63:2–9.) In short, this claim hinges on which version of events is more credible—the version described by Plaintiff and Ellwood or the version described by the officers. Summary judgment is not appropriate where "the determination of what actually happened depends on an assessment of the credibility of the [parties'] respective witnesses." *Zoroastrian Ctr.*, 822 F.3d at 751.

Were a jury to conclude Braightmeyer did use the force alleged, there is also a genuine dispute of material fact as to whether that use of force was reasonable. If the evidence is viewed in the light most favorable to Plaintiff, Braightmeyer slammed his head into the ground with enough force to break floor tiles, even though Plaintiff was not resisting arrest and the officers had no reason to believe he had a weapon, as he was wearing only boxer shorts. (Krell Depo. 120–121.) Although, as Defendants point out, "[not] every push or shove . . . violates the Fourth Amendment," Plaintiff's allegation consists of far more than a push or a shove. *See Graham*, 490 U.S. at 396. A reasonable jury could conclude the force alleged was not objectively reasonable. *See Smith v. Ray*, 781 F.3d 95, 102 (4th Cir. 2015) (holding use of force—grabbing arm, throwing to ground, jamming knee into spine, and wrenching arm behind back—was excessive because arrestee answered officer's questions calmly until he grabbed her arm).

In sum, each of Plaintiff's excessive force claims—under the Fourth Amendment (Count II), Articles 24 and 26 of the Maryland Declaration of Rights (Count VI), and state law battery (Count XII)—fail as a matter of law to the extent they allege any injury to Plaintiff's shoulder.

But each of these claims is viable to the extent they allege an injury to Plaintiff's face as a result of Braightmeyer allegedly pushing his head into the ground.

## B. The Deliberate Indifference Claims

Three of Plaintiff's claims are based on deliberate indifference: Count I alleges deliberate indifference under the Fourteenth Amendment, Count VI alleges deliberate indifference under Articles 24 and 26 of the Maryland Declaration of Rights, and Count VII alleges deliberate indifference under Articles 16 and 25 of the Maryland Declaration of Rights. At issue in each claim is Defendants' conduct during the period after Plaintiff's arrest and before Defendants dropped him off at QACDC.

### 1. Deliberate Indifference Under the Fourteenth Amendment (Count I)

To prevail on a deliberate indifference claim, a plaintiff must satisfy two requirements. First, the plaintiff must establish the "objective" component by illustrating a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). A serious medical need is one that has "been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). Second, the plaintiff must establish the "subjective" component by showing deliberate indifference on the part of the defendant. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). "Deliberate indifference" lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To be liable, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." *Id.* at 837. Relief is reserved for cases in which the official's conduct is "egregious" and involves an "unnecessary and wanton

11

infliction of pain." *King v. United States*, 536 F. App'x 358, 364 (4th Cir. 2013) (quoting *Wilson*, 501 U.S. at 297).

Although the parties dispute whether Defendants caused Plaintiff's injuries, as discussed in Part III.A.1, they do not dispute that Plaintiff was experiencing significant shoulder problems at the time of his arrest. In fact, Defendants' apparent theory of the case—based on Dr. Saltzman's unsworn report—is that Plaintiff was already suffering from an "unstable shoulder with a ruptured subscapularis tendon and atrophic subscapularis muscle" at the time of his arrest. (M.S.J. Ex. 6 at 5.) Therefore, the Court can assume for the sake of summary judgment that Plaintiff had serious medical needs at the time of the challenged conduct. The issue, therefore, is whether there is a genuine dispute of material fact as to whether Defendants were deliberately indifferent to those needs.

Plaintiff contends Defendants were fully aware of his medical needs in the period immediately after his arrest. According to Plaintiff, he told Defendants "over and over again" that he "did not feel [his] hand and that it was hurting, that [he] needed help." (Krell Depo. 175:4–6.) Ellwood testified that he heard these repeated pleas. (Ellwood Depo. 55:6–8.) Plaintiff's needs were also allegedly obvious from looking at his shoulder: it was "red" and "swollen" and "clearly deformed." (Krell Depo. 175:2, 176:7–8.) Nevertheless, Defendants never provided Plaintiff medical aid. (*Id.* 130:11–18.) In fact, when Brice suggested Braightmeyer move Plaintiff's handcuffs to the front, Braightmeyer allegedly refused, saying "F this faggot, [] I'm sticking to protocol." (*Id.*) Ellwood corroborates this account. (Ellwood Depo. 52:6–9.)

Defendants dispute they had any knowledge that Plaintiff had serious medical needs at the time of the arrest. According to Defendants, after Plaintiff complained about shoulder pain, Braightmeyer, under the instruction of Brice, "immediately" moved the handcuffs from Plaintiff's

back to his front. (Braightmeyer Depo. ¶ 9.) But beyond this initial complaint about shoulder pain, Defendants assert they had no reason to know any further aid was needed: there were no visible problems with Plaintiff's shoulder and they never heard him request medical attention.[5] (Id. ¶¶ 9–10; Brice Depo. 63:8–9, M.S.J Ex. 2, ECF No. 58-4.)

The conflicting accounts of Defendants' knowledge of and response to Plaintiff's medical needs reveal a genuine dispute of material fact as to whether Defendants' conduct constituted deliberate indifference. If the version of events described by Plaintiff and Ellwood is believed, Defendants observed a visibly injured shoulder and heard Plaintiff tell them "over and over again that [he] did not feel [his] hand and . . . needed help." (Krell Depo. 175:2–17, 176:7–8.) A reasonable jury could conclude Defendants were therefore aware of facts suggesting there was "a substantial risk of harm" to Plaintiff. *Farmer*, 511 U.S. at 837. A reasonable jury could also conclude Defendants actually "dr[e]w the inference" that there was a risk of harm to Plaintiff and subsequently ignored that risk, *see id.*, based on Brice's suggestion that Braightmeyer reposition Plaintiff's handcuffs and Braightmeyer's refusal to do so. (Krell Depo. 130:11–18.) The coupling of a homophobic slur with this refusal could render Defendants' alleged inaction sufficiently "egregious" to constitute deliberate indifference. *See King*, 536 F. App'x at 364. Whether the version of events described by Plaintiff and Ellwood is more or less credible than the version described by Defendants is a question for the jury.

Finally, contrary to Defendants' assertion, Plaintiff's lack of evidence that the delay in medical treatment resulted in permanent damage or worsened his long-term prognosis does not

---

[5] Defendants cite Dr. Saltzman's opinion that "[n]o reasonable officer would have known that handcuffing Mr. Krell from behind could be problematic" merely from looking at Plaintiff's shoulder. (M.S.J. Ex. 6 at 6.) For the reasons discussed in n.4, the Court cannot consider Dr. Saltzman's unsworn report. But even if it could, Plaintiff and Ellwood both testified that Plaintiff made repeated pleas for help, which is sufficient to create a genuine dispute of material fact as to whether Defendants were aware Plaintiff needed medical aid. (Krell Depo. 175:4–6; Ellwood Depo. 55:6–8.)

defeat his claim. (Reply at 10, ECF No. 71.) A plaintiff can prevail on a deliberate indifference claim merely by showing a delay in treatment prolonged his pain, which Plaintiff has arguably done here. *See Abraham v. McDonald*, 493 F. App'x 465, 466 (4th Cir. 2012) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.") (citation omitted).

Because there is a genuine dispute of material fact as to whether Defendants were deliberately indifferent to Plaintiff's medical needs, the Court denies summary judgment with respect to Plaintiff's Fourteenth Amendment claim (Count I).

### 2. Deliberate Indifference Under Articles 16 and 25 of the Maryland Declaration of Rights (Count VII)

"The Maryland Declaration of Rights contains two prohibitions against cruel and unusual punishment": Articles 16 and 25. *Delnegro v. State*, 81 A.2d 241, 245 (1951). These provisions are construed "*in pari materia*" with their federal counterpart, the Eighth Amendment. *Evans v. State*, 914 A.2d 25, 67 (2006). "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–72 n.40 (1977)). In other words, the Eighth Amendment only applies to post-conviction detainees.

Plaintiff acknowledges that he does not allege any facts against Defendants related to the period when Plaintiff was a post-conviction detainee at QACDC. (Opp'n Mem. at 40–42.) Plaintiff also acknowledges that Articles 16 and 25 are analogs of the Eighth Amendment. (*Id.* at 41.) Nonetheless, Plaintiff asserts that his claims under Articles 16 and 25 are viable. (*Id.*) Plaintiff's theory is that because the standard for analyzing a deliberate indifference claim is the same under the Fourteenth and Eighth Amendments, a plaintiff who can state a claim under the state analog of the Fourteenth Amendment (Article 24) should necessarily be able to state a claim

14

under the state analogs of the Eighth Amendment (Articles 16 and 25). (*Id.*) In other words, he contends that the distinction between a pretrial detainee and a post-conviction inmate does not matter under the Maryland Declaration of Rights, even though it does under federal law. (*Id.*)

In support of this theory, Plaintiff cites *Espina v. Prince George's County*, 82 A.3d 1240 (Md. Ct. Spec. App. 2013), *aff'd sub nom. Espina v. Jackson*, 442 Md. 311, 112 A.3d 442 (Md. 2015). In *Espina*, the Court of Special Appeals held that a plaintiff could prevail on an excessive force claim under the state analog of the Fourteenth Amendment (Article 24) even though the plaintiff was an arrestee and not a pretrial detainee at the time force was used. *Id.* at 1266. The Court appeared to reason that because the plaintiff could have stated a claim under the state analog of the Fourth Amendment (Article 26)—and the test for what constitutes excessive force is the same under the Fourth and Fourteenth Amendments—it should not matter whether the plaintiff brought the claim under Article 24 or 26. *Id.* The court's holding, however, was confined to the context of Articles 24 and 26. There was no mention of Articles 16 or 25, nor did the court go as far as to suggest the provisions of the Maryland Declaration of Rights are interchangeable whenever the same legal standard is relevant to two different provisions.

Plaintiff has not identified any cases—and the Court has not been able to identify any—suggesting *Espina*'s rationale should extend to Articles 16 and 25. Because courts have traditionally held that Maryland's Eighth Amendment analogs only apply to post-conviction detainees, the Court applies that rule here. *See e.g., Bost v. Bradds*, Civ. No. SAG-12-2544, 2013 WL 5308275, at *9 (D. Md. Sept. 18, 2013) (granting defendant summary judgment where plaintiff attempted to make a claim for an unlawful arrest under Article 25 because "Article 25 scrutiny is inappropriate for allegations regarding conduct prior to a formal adjudication of guilt"). Because

Plaintiff does not allege any facts against Defendants related to his time as a post-conviction detainee, he cannot as a matter of law prevail on a claim under Articles 16 and 25.

The Court will grant Defendants' motion for summary judgment with respect to Plaintiff's claim under Articles 16 and 25 of the Maryland Declaration of Rights (Count VII).[6]

### 3. Deliberate Indifference Under Articles 24 and 26 of the Maryland Declaration of Rights (Count VI)

"Articles 24 and 26 of Maryland Declaration of Rights are the state constitutional counterparts to the Fourteenth and Fourth Amendments, respectively." *Meyers v. Balt. Cnty.*, 981 F. Supp. 2d 422, 430 (D. Md. 2013). Because the Court denied summary judgment with respect to Plaintiff's deliberate indifference claim under the Fourteenth Amendment, it does so with respect to Plaintiff's deliberate indifference claim under the Fourteenth Amendment's state law analog, Article 24. *See e.g., Bost v. Wexford Health Sources, Inc.*, Civ. No. ELH-15-3278, 2018 WL 3539819, at *55 (D. Md. July 23, 2018) (disposing of an Article 24 deliberate indifference claim concurrently with the parallel Fourteenth Amendment claim).

But Plaintiff's claim under Article 26 faces the same problem that his claims under Articles 16 and 25 faced: his status as a pretrial detainee at the time of the alleged deliberate indifference is not compatible with the state constitutional claim he is trying to bring. Once Plaintiff was apprehended, he became a pretrial detainee and the Fourth Amendment no longer applied to him. *See Robles v. Prince George's Cty., Maryland*, 302 F.3d 262, 268 (4th Cir. 2002) ("Once the single act of detaining an individual has been accomplished, the [Fourth] Amendment ceases to apply.").

---

[6] At the motion to dismiss stage, the Court held Plaintiff had stated a claim for deliberate indifference under Articles 16 and 25 but did not discuss the matter in its memorandum. That was in error. Defendants now ask the Court to either dismiss this claim or grant summary judgment. The Court will grant summary judgment. *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 ("when a motion to dismiss is combined with a motion for summary judgment and outside matters are considered by the court with respect only to the latter motion, the district judge may dispose of the motion . . . under Rule 56.").

Accordingly, the more appropriate provision for Plaintiff's deliberate indifference claim appears to be Article 24, not Article 26.

It is true that in the context of excessive force claims brought under Articles 24 and 26, courts do not strictly observe the distinction between arrestees and pretrial detainees. *See Espina*, 82 A.3d 1240, 1265–66 (permitting a plaintiff to bring an excessive force claim under Article 24 even though he was an arrestee and not a pretrial detainee); *see also Holloway-Johnson v. Beall*, 103 A.3d 720, 737 (Md. Ct. Spec. App. 2014), *partially rev'd on other grounds*, 130 A.3d 406 (Md. 2016) ("Whether an excessive force claim is brought under Article 24 or Article 26 . . . is a distinction without a difference."). But courts have not treated Articles 24 and 26 as interchangeable in the deliberate indifference context. *See Cortez v. Prince George's Cty. Maryland*, 31 F. App'x 123, 130 (4th Cir. 2002) (concluding that plaintiff's deliberate indifference claim was only cognizable under Article 24, not Article 26). Because the Court has not been able to identify any authority suggesting a pretrial detainee can prevail on a deliberate indifference claim under Article 26, it declines to reach such a conclusion here.

Accordingly, Plaintiff's deliberate indifference claim under Count VI survives to the extent it alleges deliberate indifference under Article 24, but not Article 26.

### C. The Equal Protection Claim (Count IV)

To prevail on an equal protection claim, a plaintiff must establish that he "has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

Plaintiff alleges that after he was handcuffed, he asked Braightmeyer to move the handcuffs to his front because of his injured shoulder and Braightmeyer refused, saying "F this faggot . . . I'm sticking to protocol." (Krell Depo. 130:14–18.) Ellwood testified that he witnessed this encounter and heard Braightmeyer make this comment. (Ellwood Depo. 52:6–9.) Plaintiff, in short, argues that Braightmeyer used excessive force against him and denied him medical aid because of his sexual orientation.

Defendants deny that Braightmeyer used a homophobic slur and that Plaintiff received any unequal treatment because of his sexual orientation. (Braightmeyer Decl. ¶ 8; Brice Decl. ¶ 9.) But they contend that even if the incident Plaintiff described did occur, Plaintiff's claim fails as a matter of law for three primary reasons: (1) offensive language is not in itself grounds for an equal protection violation, (2) Plaintiff has failed to show Braightmeyer acted with discriminatory intent, and (3) Plaintiff has offered no evidence that Defendants would have treated a heterosexual arrestee differently. (M.S.J. Mem. Supp. at 28–31; Reply at 11.) The Court addresses each argument in turn.

First, Plaintiff's equal protection claim is not solely based on the use of offensive language. As Defendants note, that would be insufficient to state a claim. *See Owen-Williams v. City of Gaithersburg*, Civ. No. PJM-10-0185, 2011 WL 53082 (D. Md. Jan. 7, 2011). Instead, Plaintiff has alleged that Braightmeyer used excessive force (by refusing to reposition his handcuffs) and was deliberately indifferent to his medical needs (by refusing to render medical aid) *because* of Plaintiff's sexual orientation. (Opp'n Mem. at 36.) Plaintiff, in other words, alleges he was the victim of unconstitutional conduct because of his sexual orientation, which is sufficient to state an equal protection claim. *See Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002).

Second, a reasonable jury could find the alleged discrimination was purposeful. Courts routinely hold that derogatory remarks can be evidence that disparate treatment was the result of purposeful discrimination. *Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1133 (4th Cir. 1988) (explaining that racial slurs can be evidence of discriminatory intent); *see also Chappell v. Miles*, Civ. No. MBS-12-303, 2012 WL 1570020, at *5 (D.S.C. May 3, 2012) ("While [defendant's] [homophobic] comments themselves do not violate the equal protection clause, the comments are relevant because they tend to reveal [d]efendant's reason for shoving [p]laintiff.") Accordingly, a reasonable jury could find that any disparate treatment Plaintiff received was the result of purposeful discrimination.

Finally, Plaintiff's lack of direct evidence that Braightmeyer would have treated a heterosexual arrestee differently does not defeat Plaintiff's claim. Such direct evidence is not needed here. Where derogatory remarks are "closely tied to impermissible conduct," that proximity can "giv[e] rise to the inference that [d]efendants' actions were discriminatorily motivated." *Stout v. Reuschling*, No. Civ. No. TDC-14-1555, 2015 WL 1461366, at *12 (D. Md. Mar. 27, 2015); *see also Harrison v. Prince William Cty. Police Dep't*, 640 F. Supp. 2d 688, 706 (E.D. Va. 2009) (explaining that the coupling of a racial slur with excessive force created an "inference" of intentional discrimination). This is true even if the plaintiff "does not offer any specific comparison to a similarly situated individual of a different [group]." *Stout*, 2015 WL 1461366, at *11. Accordingly, the coupling of the homophobic remark with an allegation of unconstitutional conduct is sufficient to create an "inference that Defendants' actions were discriminatorily motivated." *Id.* at *12.

In short, a reasonable jury could find that Braightmeyer intentionally discriminated against Plaintiff because of his sexual orientation. Therefore, he can prevail on an equal protection claim

unless the disparate treatment "can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654. "[R]ational basis review applies to classifications based on sexual orientation," meaning the state official only needs a rational basis to justify treating a plaintiff differently. *Bostic v. Schaefer*, 760 F.3d 352, 396–97 (4th Cir. 2014) (citing *Romer v. Evans*, 517 U.S. 620 (1996)). Based on Braightmeyer's alleged use of a homophobic slur, a reasonable jury could infer that Braightmeyer's actions were done with discriminatory animus rather than a rational basis.

Accordingly, there is a genuine dispute of material fact as to whether Braightmeyer violated the Equal Protection Clause. Defendants' motion for summary judgment is denied with respect to Count IV.

### D. Qualified Immunity for the Constitutional Claims

Defendants contend they are entitled to qualified immunity for each of the constitutional claims alleged against them. State officials performing discretionary duties may raise qualified immunity to shield themselves "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *In re Mills*, 287 F. App'x at 280 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "It is a defendant's burden to establish that he is entitled to qualified immunity." *Campbell v. Moore*, 92 F. App'x 29, 33 (3d Cir. 2004). Qualified immunity involves two prongs: (1) whether the facts shown establish a violation of a constitutional right; and (2) whether the right was clearly established at the time of the challenged conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

As discussed *supra*, Plaintiff has viable claims under the Fourth Amendment, the Fourteenth Amendment's Due Process Clause, and the Fourteenth Amendment's Equal Protection

Clause. The question, therefore, is whether the federal rights Defendants allegedly violated were "clearly established" at the time the challenged conduct occurred. *See id.*

In ruling on Defendants' Motion to Dismiss, the Court held the federal rights at issue in these three claims were clearly established and Defendants were not entitled to qualified immunity. (Mem. Op. Mot. Dismiss at 19–24., ECF No. 27.) Plaintiff's allegations underlying each of these claims have not substantively changed since the motion to dismiss stage. Although the Court will grant summary judgment for the Defendants on Plaintiff's Fourth Amendment excessive force claim to the extent it alleged a shoulder injury, Plaintiff still has a viable claim that Braightmeyer's use of excessive force caused him facial injuries. Accordingly, the narrow right at issue in the Fourth Amendment qualified immunity analysis is the same as it was at the motion to dismiss stage—"the right of a compliant arrestee to avoid physical injury." (Mem. Op. Mot. Dismiss at 20.) For the reasons set forth in that opinion, this right was clearly established at the time of the challenged conduct. (*Id.*)

Because the narrow rights at issue in each of Plaintiff's constitutional claims have not changed since the motion to dismiss stage—nor have Defendants' legal arguments as to why they are entitled to qualified immunity—the Court declines to repeat its prior analysis. For the reasons discussed in the Court's prior ruling (Mem. Op. Mot. Dismiss at 19–24), Defendants are not entitled to qualified immunity with respect to Plaintiff's Fourth Amendment excessive force claim (Count II), Fourteenth Amendment deliberate indifference claim (Count I), or Fourteenth Amendment equal protection claim (Count IV).

### E. Negligence and Gross Negligence

To prevail on a negligence claim, a plaintiff must establish "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that

the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1238 (Md. 2004). Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Cooper v. Rodriguez*, 118 A.3d 829, 832–33 (Md. 2015). Gross negligence "necessarily depends on the facts and circumstances . . . and is usually a question for the jury." *Id.* at 846.

Although state personnel are typically immune from liability for negligent acts committed in their scope of duty, state personnel lose that protection when a plaintiff has a valid claim for gross negligence. *Humbert v. O'Malley*, Civ. No. WDQ-11-0440, 2011 WL 6019689, at *10 (D. Md. Nov. 29, 2011) (declining to dismiss negligence claim even though "a state employee cannot be held liable for ordinary negligence" because "gross negligence [is] sufficient to overcome [defendant's] claim of immunity"). Plaintiff's negligence claim, therefore, rises and falls with his gross negligence claim.

Plaintiff's gross negligence claim is based on Defendants' failure to render medical aid. (Opp'n Mem. at 43–44.) As discussed in Part III.B.1, Plaintiff contends it was obvious he needed medical assistance after his arrest: his shoulder was "red" and "swollen" and "clearly deformed." (Krell Depo. 175:2, 176:7–8.) He conveyed this need to Defendants repeatedly through numerous pleas for help. (*Id.* 175:4–6.) Rather than help Plaintiff, Braightmeyer's alleged response was to refuse to reposition Plaintiff's handcuffs and to direct a homophobic slur at him. (*Id.* 130:11–18.) Ellwood corroborates this entire account. (Ellwood Depo. 55:6–8, 52:6-9.)

Based on the testimony of Plaintiff and Ellwood, a reasonable jury could find Defendants were grossly negligent. Defendants' alleged refusal to render medical aid in the face of a clear

need could amount to an "intentional failure to perform a manifest duty." *Cooper*, 118 A.3d at 832. And Braightmeyer's alleged refusal to reposition Plaintiff's handcuffs because of his sexual orientation could "impl[y] a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Id.* at 832–33.

Accordingly, Defendants' motion for summary judgment is denied with respect to Plaintiff's negligence claim (Count IX) and gross negligence claim (Count X).

### F. Intentional Infliction of Emotional Distress (IIED)

Plaintiff alleges that Defendants' conduct during his arrest and the period thereafter was sufficiently egregious to constitute IIED. To prevail on an IIED claim under Maryland law, a plaintiff must allege sufficient facts in support of four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; (4) The emotional distress must be severe." *Takacs v. Fiore*, 473 F. Supp. 2d 647, 651–52 (D. Md. 2007) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)). IIED is "an exceptional tort" to which a "stringent" standard applies. *Ky. Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8, 9 (Md. 1997).

The parties' dispute centers on whether Defendants' conduct was extreme and outrageous. Plaintiff contends that "refusing a direct request [to reposition his handcuffs] and then adorning that refusal with a homophobic slur" meets this high bar. (Opp'n Mem. at 45.) Defendants deny Plaintiff's allegations, but contend that even if the allegations are true, the conduct alleged falls short of IIED's high bar.

At the motion to dismiss stage, this Court concluded that Plaintiff sufficiently stated a claim for IIED. (Mem. Op. at 29–30.) In doing so, it relied on *Hines v. French*, 852 A.2d 1047 (Md.

Ct. Spec. App. 2004). In *Hines*, the Maryland Court of Special Appeals held it was not extreme and outrageous for an officer to ignore a plaintiff's injury when arresting her, laugh at the pain he inflicted, handcuff her too tightly, and then refuse to loosen the handcuffs after she requested. *Id.* at 1060. This Court compared the allegations in *Hines* to those in Plaintiff's Complaint and concluded Plaintiff's allegations were more egregious, as Plaintiff alleged Braightmeyer dislocated his shoulder and significantly worsened his injury. (Mem. Op. at 30.) But as discussed in Part III.A.1, Plaintiff cannot establish as a matter of law that Defendants dislocated his shoulder or worsened his injury. Absent this showing, the remaining allegations are very similar to those in *Hines*—Defendants ignored Plaintiff's injury, handcuffed him in a manner that was painful, and refused to loosen the handcuffs after he requested.

Although *Hines* suggests Plaintiff's IIED claim is not viable, Plaintiff's case is arguably distinguishable in two respects. First, Plaintiff alleges Braightmeyer pushed his head into the ground with enough force to break floor tile—a degree of force not alleged in *Hines*. But even such a display of force is insufficient to constitute extreme and outrageous conduct under Maryland law. *See Sherrill v. Cunningham*, Civ. No. JKB-18-476, 2018 WL 3533550, at *2 (D. Md. July 23, 2018) (concluding it was not extreme and outrageous when officers "forcibly removed [p]laintiff from her vehicle and violently threw her face down on the concrete.") Second, Plaintiff alleges that Braightmeyer used a homophobic slur during his arrest—although the defendant in *Hines* laughed at the plaintiff's pain, there were no allegations he used offensive language. *Hines*, 852 A.2d at 1060. But even acts of policing that "evince[] callousness and disrespect for a member of the public" are generally not extreme and outrageous. *Sherrill*, 2018 WL 3533550, at *11. Ultimately, the distinguishing factors here fail to justify a departure from the holding in *Hines*.

24

Because no reasonable jury could conclude Defendants' conduct meets the "stringent" IIED standard, *Ky. Fried Chicken,* 607 A.2d at 9, the Court will grant Defendants' motion for summary judgment on Plaintiff's IIED claim (Count XI).

### G. *State Statutory Immunity for the State Law Claims*

Defendants contend, as state personnel, they are entitled to Maryland statutory immunity for each of the claims pending against them under the Maryland Declaration of Rights and Maryland tort law. (M.S.J. Mem. Supp. at 43–45.) "State personnel, as defined in § 12-101 of the State Government Article, are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the state or its units have waived immunity . . ." Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). This provision renders state officials immune from liability in federal court. *See Thomas v. Maryland,* Civ. No. GJH-17-1739, 2017 WL 6547733, at *9 (D. Md. Dec. 20, 2017) (dismissing claims against state officials where complaint contained no allegations of malice or gross negligence); *Hines,* 852 A.2d at 1061 (concluding immunity extends to negligence, intentional torts, and constitutional torts). Where, as here, Plaintiff sues Defendants for damages, a finding that they had statutory immunity would dismiss the state law claims.

To establish malice, a plaintiff must show the state official performed an act "with an evil or rancorous motive influenced by hate, the purpose being to deliberately injure the plaintiff." *Talley v. Farrell,* 156 F. Supp. 2d 534, 545 (D. Md. 2001). To establish gross negligence, a plaintiff must establish "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Cooper,* 118 A.3d at 832–33. In other words, gross negligence occurs when a state employee "is so 'utterly indifferent to the rights

of others that he acts as if such rights did not exist.'" *Bost v. Wexford Health Sources, Inc.*, 2018 WL 3539819, at \*44 (quoting *Newell v. Runnels*, 967 A.2d 729, 764–65 (Md. 2009)).

"Whether gross negligence exists necessarily depends on the facts and circumstances . . . and is usually a question for the jury." *Cooper*, 118 A.3d at 846 (internal quotation marks omitted). This is true for the question of malice as well. *See Ford v. Baltimore City Sheriff's Office*, 814 A.2d 127, 136 (Md. Ct. Spec. App. 2002) ("Indeed, several other Maryland cases have presented scenarios in which questions of malice, disposed of in summary judgment or by a motion to dismiss, were remanded so that they could be decided by a fact finder.").

A reasonably jury could find Defendants acted with malice or gross negligence during his arrest and the period immediately after. In fact, the Court has already concluded that there is a genuine dispute of material fact as to whether Defendants were grossly negligent when they refused to render medical aid despite allegedly knowing Plaintiff was in serious pain. *See* Part III.E. A reasonable jury could also conclude that pushing the head of a compliant arrestee into the ground with enough force to break floor tile constituted "an intentional failure to perform a manifest duty in reckless disregard of the consequences." *Cooper*, 118 A.3d at 832–33.

Accordingly, Defendants are not entitled to state statutory immunity for any of the claims pending against them.

## IV. *Conclusion*

For the foregoing reasons, an Order shall enter: (1) denying Defendants' motion for summary judgment with respect to Counts I, II, IV, VI, IX, X, and XII, and (2) granting Defendants' motion for summary judgment with respect to Counts VII and XI.

DATED this 3 day of October, 2019.

BY THE COURT:

James K. Bredar
Chief Judge